Steven M. Lucks
Erin C. O'Leary
S. Aaron Loterstein
FISHKIN LUCKS LLP
277 Broadway, Suite 408
New York, NY 10007
(646) 755-9200
slucks@fishkinlucks.com
eoleary@fishkinlucks.com
aloterstein@fishkinlucks.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PANTHEON PROPERTIES, INC.; and LUCALEX CORP., d/b/a PANTHEON PROPERTIES,<br><br>               Plaintiffs,<br><br>v.<br><br>JOHNATHEN HOUSTON, JH CONSULTING FIRM LLC, and M & M LIGHTNING STRIKES,<br><br>               Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Pantheon Properties, Inc. ("PPI") and Lucalex Corp., d/b/a Pantheon Properties ("Lucalex") (together with PPI, "Pantheon"), by and through their attorneys, Fishkin Lucks LLP, as and for their Complaint against defendants Johnathen Houston ("Houston"), JH Consulting Firm LLC ("JHC"), and M & M Lightning Strikes ("M & M") hereby state and allege as follows:

## NATURE OF ACTION

1. This is an action for money damages arising out of Defendants' brazen scheme to embezzle more than $176,000 from Plaintiffs.

**PARTIES**

2. Plaintiff PPI is a New Jersey corporation, with a principal place of business at 119 West 57th Street, New York, New York, 10019.

3. Plaintiff Lucalex is a Delaware corporation with a principal place of business at 119 West 57th Street, New York, New York, 10019.

4. Defendant Houston is a resident of Houston, Texas and is the sole member of JHC.

5. Upon information and belief, JHC is a sole-member limited liability company organized and existing under the laws of the State of New York. JHC is a resident of Houston, Texas, the place of residency of its sole member, Houston.

6. Upon information and belief, JHC has no legitimate business purpose, conducts no legitimate business, and derives no legitimate revenue from any business activities. JHC's sole purpose was to perpetrate the illegal scheme set forth herein.

7. Upon information and belief, M & M is an unincorporated entity with its principal place of business located at 11615 Green Glade Drive, Houston, Texas, 77099.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the parties and over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the matter in controversy exceeds $75,000.

9. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

**FACTUAL ALLEGATIONS**

10. Pantheon is in the business of, among other things, providing real estate property management services. Pantheon's clients are the owners of commercial and industrial properties

that pay a management fee to Pantheon, in exchange for which Pantheon arranges for certain services, including groundskeeping, maintenance, rent collection, marketing, and, in some cases, payment of bills and invoices.

11.  As part of its property management services, Pantheon contracts with or arranges for third-party vendors to provide certain services to Pantheon clients. Those third-party vendors submit invoices to Pantheon on behalf of its clients (*i.e.* individual property owners), and Pantheon is authorized by its clients to pay these invoices from the clients' respective bank accounts to the vendors.

12.  In or about October 2018, Pantheon hired Houston to be an executive assistant at Pantheon.

13.  As part of the hiring and onboarding process, Houston designated as his emergency contact "Marvin M. Love," of 11615 Green Glade Drive, Houston, Texas, whom Houston identified as his brother.

14.  Houston's job duties included submitting invoices from third-party vendors to Pantheon and to arrange for payment on behalf of Pantheon's clients. To do this, Houston used Pantheon's sophisticated real estate management software, which is used for bookkeeping for the managed properties. When bills were received from third parties, Houston would categorize the expense for purposes of the client's general ledger, and either directly or indirectly upload the bill to the system for payment. In a latter step required by the software, Houston would validate or present the expense for approval so that a check can be issued.

15.  Kenneth Cohen, the President and CEO of both Lucalex and PPI, is the sole officer authorized to approve expenses and sign checks on behalf of Pantheon's clients.

16. Once expenses were approved by Mr. Cohen, the real estate management software then allowed Houston to "post" the expense to the property books. Houston was then supposed to print a check to a printer in Mr. Cohen's office for signature.

17. Once the check was signed by Mr. Cohen, Houston would mail the check to the appropriate payee.

18. Once posted, payments are reflected in the appropriate entity's ledger in the bookkeeping section within the property management software. The Printed checks are reflected on a check register, which contains details of each invoice and identifies the payee, the invoice date, the check control number, the check number and date, and the general ledger code pertaining to each uploaded (and subsequently paid) expense.

19. In April, 2020, during a routine review of a report reconciling the check register with canceled checks, Mr. Cohen was alarmed to discover that for at least 44 checks issued between May 2019 and April 2020, the payee had been changed after Mr. Cohen had approved and signed it.

20. When Mr. Cohen originally had signed these 44 checks, they had been made out to known, familiar vendors for expenses that Mr. Cohen had approved be paid with clients' funds. But after he had signed the checks, Houston altered the payees to either JHC or M & M. Those 44 checks were all negotiated either by JHC or M & M.

21. Neither JHC nor M & M has ever performed any work or services for Pantheon or its clients. Before learning of Defendants' scheme, Mr. Cohen had never heard of either entity.

22. Checks altered to indicate M & M as the payee were mailed to 11615 Green Glade Drive—the same address Houston gave for the man he identified as his brother, Marvin M. Love.

23. In short, Houston improperly altered checks issued from Pantheon's clients' accounts that were intended for payment to third parties who provided services to Pantheon's clients. He did so by changing the payees to either JHC, his sole-member LLC, or M & M, an unincorporated entity that, upon information and belief, he and his brother own—neither of which provided any services to Pantheon's clients. Houston then caused JHC and M & M to negotiate those checks, effectively stealing the money.

24. Contemporaneously with the commencement of this action, Pantheon is reimbursing to its clients the money that was intended for those clients' third-party vendors, but instead was stolen by Defendants via the check-altering scheme.

25. Separately, Plaintiffs have learned that Houston has fraudulently used Pantheon's corporate credit card to purchase in excess of $10,000 worth of goods from Amazon without Pantheon's authorization.

26. Earlier this year, Houston relocated to Houston, Texas, purchasing a home and establishing residency there. Upon information and belief, Houston does not intend to return to New York.

## COUNT I
### Conversion

27. Pantheon repeats the allegations in the preceding paragraphs as if fully set forth herein.

28. Defendants intentionally, and without authority, assumed or exercised dominion or control over property belonging to Pantheon, interfering with Pantheon's right of possession in that property.

29. As a result of Defendants' conduct, Pantheon has been damaged in an amount to be determined at trial, and in any event, no less than $176,000.

## COUNT II
### Unjust Enrichment

30. Pantheon repeats the allegations in the preceding paragraphs as if fully set forth herein.

31. Defendants were enriched, at Pantheon's expense, and it is against equity and good conscience to permit Defendants to retain that with which they have been enriched.

32. As a result of Defendants' conduct, Pantheon has been damaged in an amount to be determined at trial, and in any event, no less than $176,000.

## COUNT III
### Fraud

33. Pantheon repeats the allegations in the preceding paragraphs as if fully set forth herein.

34. Defendants knowingly and intentionally perpetrated a fraudulent scheme against Pantheon whereby Houston improperly altered checks issued from Pantheon's clients' accounts and intended for payment to third parties who provided services to Pantheon's clients.

35. Houston caused JHC and M & M to negotiate those checks, causing damage to Pantheon and its clients.

## COUNT IV
### Conspiracy to Commit Fraud

36. Pantheon repeats the allegations in the preceding paragraphs as if fully set forth herein.

37. As set forth herein, Defendants collectively engaged in developing and implementing a fraudulent scheme.

38. All Defendants jointly and knowingly participated in this fraudulent scheme.

39. As a result of Defendants' fraudulent scheme, Pantheon has been damaged in an amount to be determined at trial, and in any event, no less than $176,000.

WHEREFORE plaintiffs Pantheon Properties, Inc. and Lucalex Corp., d/b/a Pantheon Properties demand judgment against defendants Johnathen Houston, JH Consulting Firm LLC, and M & M Lightning Strikes for (i) damages in an amount to be determined at trial, and in any event, no less than $176,000, including, but not limited to, compensatory damages and punitive damages; (ii) attorneys' fees; (iii) costs and disbursements; and (iv) such other relief in plaintiffs' favor and against Defendants as this Court deems just and proper.

Dated: April 24, 2020

s/ *Steven M. Lucks*
Steven M. Lucks
Erin C. O'Leary
S. Aaron Loterstein
FISHKIN LUCKS LLP
277 Broadway, Suite 408
New York, NY 10007
(646) 755-9200
slucks@fishkinlucks.com
eoleary@fishkinlucks.com
aloterstein@fishkinlucks.com
Attorneys for Plaintiffs