USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**Pantheon Properties, Inc. & Lucalex Corp.**
*d/b/a/ Pantheon Properties,*

                              **Plaintiffs,**                    20-CV-3241-ALC

                -against-                                **Opinion and Order**

**Johnathen Houston et al.,**

                              **Defendants.**
-----------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      This civil action arises from allegations that Defendants Johnathen Houston ("Houston"), JH Consulting Firm ("JHC"), and M & M Lightning Strikes ("M & M") engaged in an illegal scheme to steal money from Plaintiffs Pantheon Properties, Inc. ("PPA") and Lucalex Corp., d/b/a Pantheon Properties ("Lucalex") (collectively, "Pantheon" or "Plaintiffs"). Plaintiffs allege that Houston, in his role as executive assistant at Pantheon, altered checks intended for third-party vendors who provided services to Pantheon and its clients to list JHC, his sole-member LLC, and M & M, an unincorporated entity believed to share an address with Houston's brother Marvin M. Love, as payees. Plaintiffs also allege that Houston made unauthorized personal purchases of more than $10,000 from Amazon with Pantheon's corporate credit card. Plaintiffs bring six counts—conversion, unjust enrichment, fraud, conspiracy to commit fraud, Racketeer Influenced and Corruption Organizations Act ("RICO") (18 U.S.C. § 1962(c)), and RICO Conspiracy (18 U.S.C. § 1962(d)). They seek to recover damages of no less than $272,000, to include compensatory, punitive, and treble damages; attorneys' fees; costs and disbursements; and such other and further relief that this Court deems just and proper. Houston asserts counterclaims against Plaintiffs for defamation per se, defamation, intentional infliction of

emotional distress (IIED), and breach of contract. Plaintiffs move to dismiss with prejudice Houston's counterclaims for defamation, defamation per se, and IIED under Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, Plaintiffs' Motion to Dismiss is **GRANTED** (except that the counterclaims are dismissed *without* prejudice).

## BACKGROUND

**I. Factual Allegations**

The Court has ascertained four categories of factual allegations Houston raises in support of his counterclaims in the Amended Answer and Counterclaims ("Answer").

First, he claims that Plaintiffs were aware or should have been aware of the purported scheme. More specifically, Houston alleges that Kenneth Cohen, the lead executive at Pantheon, approved each of the alleged unauthorized payments at issue and that Houston even claimed the payments on his 2019 income taxes. Answer ¶¶ 62-63. Houston further alleges that any illegal scheme would have been detected by "several layers of review" of financial reports at Pantheon. *Id.* ¶¶ 69. All financial information, including cashed checks, first went to Fitech, an India-based outside vendor for financial reporting, and then Cohen received, reviewed, and approved their full reports, which included check payee information. *Id.* ¶¶ 70-73. Pantheon investors could have raised concerns about the size of the amounts to vendors and Pantheon creditors could have pointed out that they never received payments due on invoices for their work. *Id.* ¶¶ 72-77. None of these parties or entities complained and were beyond Houston's control.[1] *Id.* ¶¶ 68, 74-75.

Second, Houston alleges that Cohen approved the payments to Houston and JHC because he "wanted to pay for Mr. Houston's loyalty and cooperation." *Id.* ¶¶ 87. His Answer accuses Cohen of knowingly permitting many "deeply unprofessional and possibly criminal activities" to

---

[1] Following the alleged scheme, on or about March 27, 2020, Houston claims that he resigned from his role. He contends that Cohen lied that Pantheon terminated him from his position. Answer ¶¶ 65-66.

occur on his watch, including the overcharging of tenants at the 3200 Liberty apartment building ("3200 Liberty"); "charg[ing] whatever price he wanted" for maintenance conducted at 3200 Liberty by a maintenance company, KCR Building Maintenance, that Cohen owned (or owns); committing "rampant personal expense fraud" through use of his Pantheon company credit card and the Pantheon Amazon.com account; and committing "immigration fraud" for his girlfriend and involving Pantheon staff to assist in doing so. *Id.* ¶¶ 79-86.

Third, Houston claims that Pantheon was a difficult place to work and that Cohen made his time there "a living hell." *Id.* ¶¶ 88. He alleges that Cohen was "regularly . . . intoxicated" and "verbally abusive" to him and other employees; used racial slurs; forced a female employee to watch pornography with him; and "regularly withheld information from []Houston then blamed him for when deadlines weren't met" and then "[]Houston would have to fix his problems." *Id.* Cohen's purported workplace behavior "left employees in tears, including Mr. Houston." *Id.* ¶¶ 91.

Fourth and finally, he alleges that Cohen "blamed [him] for the mistakes of others" in front of Pantheon clients. On or about the afternoon of January 20, 2020, Cohen blamed Houston for "a report glitch that Fitech made, but [that] []Houston detected" and "insisted" on informing the property owner clients of the 201 Penhorn and the 401 Penhorn apartment buildings by email that Houston was responsible for the mistake. *Id.* ¶¶ 92.

**II. Procedural History**

Pantheon filed its initial complaint on April 24, 2020. ECF No. 1. They amended the complaint on May 13, 2020.[2] ECF No. 22. On May 17, 2020, Houston and JHC filed their Answer and Counterclaims. ECF No. 25. They amended their answer on June 5, 2020. ECF No.

---

[2] On August 5, 2020, Plaintiff also filed a Second Amended Complaint which, among other things, added Marvin M. Love as a defendant. ECF No. 46.

33. On September 2, 2020, Pantheon moved to dismiss Houston's counterclaims. ECF No. 50. Houston filed his opposition on September 12, 2020. ECF No. 54. Pantheon replied on September 23, 2020. ECF No. 55. The Court considers this motion fully briefed.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id.* "We include in this analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

## DISCUSSION

**I. Defamation**

Houston's defamation claims rely on a single occasion where Cohen allegedly told two property owner clients working with Pantheon that Houston was to blame for "a report glitch." Because the email—a written statement—is devoid of defamatory meaning, the Court must dismiss both counts for defamation.

4

"The gravamen of an action alleging defamation is an injury to reputation." *Karedes v. Acklerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). A defamatory statement is one "that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of their confidence and friendly intercourse in society." *Id.* (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000)) (internal quotation marks omitted). To establish a claim for defamation, claimants must plead: "(1) a defamatory statement of fact about the [defendant]; (2) publication to a third party; (3) fault by the defendant; (4) falsity of the statement; and (5) special damages or per se actionability." *Oaxley v. Dolan*, 833 F.App'x 896, 899 (2d Cir. 2020) (summary order) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) and *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018)). "[T]he words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of an average reader." *Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (1st Dep't 1999). If they are not "reasonably susceptible of a defamatory meaning, they are not actionable." *Id.* "A statement that tends to injure another in his or her trade, business or profession is defamatory per se." *Fuji Photo Film U.S.A.*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) (internal quotation marks omitted).

The statement at issue is not susceptible of defamatory meaning. "A plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement or publication." *Celle*, 209 F.3d at 178. "If the statement is susceptible of only one meaning the court 'must determine, as a matter of law, whether that one meaning is defamatory.'" *Id.* (citing cases). "If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, 'it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to

5

determine in what sense the words were used and understood. *Id.* (citation omitted). Here, there is no dispute that the statement—one email to two Pantheon clients blaming Houston for a financial reporting glitch—is susceptible of only one meaning.[3] Though potentially defamatory statements are examined in the context of the larger communication at the motion to dismiss stage, the allegations here are very shortly pleaded and lack context. With the minimal factual support provided in the Answer, no reasonable mind would conclude that the statement is defamatory. "[T]he statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).

Without more, this single statement, even if untruthful, is not actionable. *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 138, 155 N.E.2d 853, 855 (1959) ("Though the report may be false and probably offensive, it is not actionable."). Such a general comment would not "expose[] an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[] an evil opinion of one in the minds of right-thinking persons, and . . . deprive[] one of their confidence and friendly intercourse in society." *Karedes,* 423 F.3d at 113. There is no suggestion in the Answer that the statement impugned Houston's reputation or that it indicated that he was generally incompetent or unable to be trusted in performing his duties. Neither do the pleadings suggest that the two Pantheon clients understood the email to be disparaging. Beyond mere conclusory assertions that Cohen's email was defamatory and unsupported assertions of mental and emotional harm referenced in his

---

[3] The exact phrasing of the statement made by Houston is not specifically provided in the Answer.

opposition brief, Houston fails to allege that the statement, as a matter of law, would "rise to the necessary level of derogation." *Chau*, 771 F.3d at 127.

To the extent Houston insists that he has adequately alleged a claim for defamation per se, he has not. The single instance rule, which New York law endorses, applies here. The rule, "a narrow exception to the principle that a statement tending to disparage a person in his or her office, profession or trade is defamatory per se[,] . . . . 'applies where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation.'" *Celle*, 209 F.3d at 180 (citing *Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 828 n. 5 (1995)). Here, Houston pleads "a single error in judgment," which falls within the single instance exception. Because he fails to allege that the single instance of error here "imputes a general unfitness or unskillfulness" to him or accuses him of "multiple wrongful acts or lapses in judgment," the claim is dismissed.[4] *Id.* at 181.

Because key elements of Houston's defamation and defamation per se counterclaims are not plausibly alleged, those counterclaims must be dismissed. "A cognizable defamation claim must meet all elements to survive the motion to dismiss stage." *Chau*, 771 F.3d at 127 (2d Cir. 2014).

## II. Intentional Infliction of Emotional Distress (IIED)

Under New York law, a claim for intentional infliction of emotional distress requires "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct

---

[4] Houston states that the Court "cannot determine" whether the single instance exception applies without having the allegedly defamatory email before it, which he can obtain in discovery should the claim survive dismissal. Def.'s Opp. at 8. But at this stage, the federal pleading standard controls, and is based upon the sufficiency of the allegations he raises in support of possible legal claims. The critical problem with the Answer is not that the Court does not have the purportedly "defamatory document" before it, but that the Answer, as pleaded, lacks sufficient factual content to adequately allege that the statement rises to the level of derogation required to plead defamation.

and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted). Houston fails to state an IIED counterclaim. His allegations against Pantheon are largely based on allegations that Cohen generally created a difficult workplace for him and other employees. However, an IIED claim must allege conduct "intentionally directed at the plaintiff." *Semper v. New York Methodist Hosp.*, 786 F.Supp.2d 566, 588 (S.D.N.Y. 2011) (citing *Gluckman v. Am. Airlines, Inc.*, 844 F.Supp.151, 158 (S.D.N.Y. 1994)). The only allegations that appear to constitute misconduct directed toward Houston are frequent intoxication at the office, verbal abuse, racial slurs, and withholding information from Houston and then blaming him for missed deadlines. He alleges that Mr. Cohen's conduct "left employees in tears, including [him]." Answer ¶¶ 91. But none of this alleged misconduct rises to the requisite level of "extreme and outrageous conduct." *Semper,* 786 F.Supp.2d at 587 (explaining that, under New York law, harassment, humiliation, and criticism in the workplace alone generally fail to state an IIED claim for relief) (collecting cases); *Bernardi v. New York State Dep't of Corr.*, No. 19-CV-11867 (KMK), 2021 WL 1999159, at *13 (S.D.N.Y. May 19, 2021) (racial and ethnically derogatory comments alone do not constitute "extreme and outrageous conduct") (collecting cases); *Stella Stylianou v. St. Luke's/Roosevelt Hosp. Ctr.*, 902 F.Supp. 54, 59 (S.D.N.Y. 1995) (threats of termination); *Shukla v. Deloitte Consulting LLP*, No. 119CV10578AJNSDA, 2020 WL 3181785, at *14 (S.D.N.Y. June 15, 2020) (false allegations of criminal activities or socially reprehensible conduct) (collecting cases). Finally, tears alone are insufficient at this stage to plead "severe emotional distress."

      Houston has not provided sufficient factual content to make a plausible showing that Cohen engaged in conduct intentionally directed toward him "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)). This standard is "rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 122. In this district, "[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish this tort." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013) (collecting cases). The "highly disfavored cause of action" for IIED is "almost never successful," and this is not the rare case in which it is successful. *McGown v. City of New York*, No. 09-CV-8646, 2010 WL 3911458, at *5 (S.D.N.Y. Sept. 9, 2010).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss is hereby **GRANTED**, except that Defendant Houston's defamation, defamation per se, and IIED counterclaims are dismissed without prejudice. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 50.

**SO ORDERED.**

**Dated**: Sept. 30, 2021
**New York, New York**

                                                    The Hon. Andrew L. Carter, Jr.
                                                    United States District Judge