```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/28/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PANTHEON PROPERTIES, INC., et al.,

                                            **Plaintiffs,**              20-CV-03241 (ALC)(SN)

          -against-                          **OPINION & ORDER**

JOHNATHEN HOUSTON, et al.,

                                            **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

       Plaintiffs Pantheon Properties, Inc. and Lucalex Corp. move pursuant to Federal Rule of Civil Procedure 37 for sanctions against defendant Johnathen Houston ("Houston"). See ECF No. 85. Plaintiffs seek an award of attorney's fees to cover the costs associated with Houston's deposition, their preparation for Houston's second deposition, and this motion for sanctions. ECF No. 85, Ex. 1 Memorandum of Law in Support of Plaintiffs' Motion for Sanctions ("Pl. Br.") at 2. Plaintiffs' motion is GRANTED.

                                                  **BACKGROUND**

       In addition to Houston, plaintiffs also sued JH Consulting Firm LLC ("JHC"), Martin Love ("Love"), and M & M Lightning Strikes. Familiarity with the facts of this case is otherwise assumed. On July 9, 2020, plaintiffs served their first interrogatories and request for production of documents on defendants. Pl. Br. at 2. As relevant here, plaintiffs sought "[a]ll Documents or Communications exchanged between You and any other person, or among any other persons, Concerning the subject matter of this action," "[a]ll Communications between Houston, JHC, or M & M, on the one hand; and Marvin Love, on the other hand," and "[a]s-filed copies of

[defendants'] tax returns for 2018, 2019, and, when available, 2020." ECF No. 85, Ex. 3 at 4, 11–14. Defendants replied with boilerplate objections but stated that they would "identify and produce any and all non-privileged documents that are responsive . . . to the extent that they exist or are within Defendants' custody and control." Id.

In a November 20, 2020, deficiency letter, plaintiffs wrote that they had received only a "preview copy of 2019 tax returns" and had not received any communications pursuant to their requests. ECF No. 85, Ex. 4 at 5. Following additional communication from plaintiffs' counsel in early December, defendants provided a supplemental response, stating for every request that "[a]ll non-privileged documents responsive to this Request have been identified and produced to the extent that they exist." ECF No. 85, Ex. 6 at 2–27. Plaintiffs countered that documents produced by defendants indicated the existence of extensive communication between Houston and Love. ECF No. 85, Ex. 7 at 2. In their second supplemental responses to plaintiffs' request for production, defendants reiterated for all 28 document requests that "all non-privileged documents responsive to this Request have been identified and produced to the extent that they exist." ECF No. 85, Ex. 8 at 2–31.

Plaintiffs deposed Houston on December 22, 2020. ECF No. 85, Ex. 10, Deposition of Johnathen Houston ("Houston Dep."). During the deposition, Houston showed plaintiffs' counsel text messages he had sent to Love on his phone. Id. at 30:13–15. When asked why they were not produced, he said "[i]t's no reason." Id. at 30:17. Following a conversation about his tax returns, he stated that he would not provide plaintiffs' counsel with his accountant's phone number so that they could request an as-filed copy of the returns. Id. at 126:13–21. After a lunch break, Houston was increasingly uncooperative, responding "I don't know" or "I don't recall" more

than 230 times in a two-hour period (Pl. Br. at 6), including when he was asked basic questions about the operation of his business:

> Q: Do you know if you have any revenue to JH Consulting Firm in the last week?
> A: I can't recollect that.
> Q: The last month?
> A: I can't recollect it.
> Q: Have you performed any services under the JH Consulting Firm name in the last week?
> A: I can't recollect that.
> Q: How about in the last month?
> A: I can't recollect that.
> Q: How about the last six months?
> A: I can't recollect.
> Q: How about the last year?
> A: I can't recollect that.
> Q: What was the last time you recollect performing any services under the JH Consulting Firm name?
> A: I can't recollect it. The trauma from the Covid, I can't recollect.

Houston Dep. at 214:2–22. Houston did not know whether March comes before April, id. at 292:5–7, the gender of his therapist, id. at 307:1–6, or whether he had driven from Texas to New York "zero" or "100 times" between April and December that year, id. at 201:8–202:12. During the deposition, referring to plaintiffs' attorney, he texted to Love, "[t]his bitch i[s] dumb." ECF No. 85, Ex. 10. Plaintiffs' counsel suspended the deposition five hours and 20 minutes after it began. Houston Dep. at 307:16–22.

In a January 15, 2021, status letter to the Court, plaintiffs addressed defendants' outstanding production of communications between Houston and Love and the as-filed tax returns. ECF No. 69 at 1–2. Defendants said that both Love and Houston had lost text messages when they changed phones. Id. at 2. Plaintiffs also described Houston's conduct at his deposition and stated that they intended to seek sanctions. Id. at 3. At a subsequent Court hearing, the Court ruled that the communications were "discoverable information," and instructed defendants' counsel to take possession of his clients' phones, download the texts, and provide them to

plaintiffs. ECF No. 85, Ex. 11 at 6:18–7:21. The Court further ordered defendants' counsel to either produce the individual and corporate tax returns for Houston and JHC for 2018 and 2019, or if he could not produce the returns directly, provide releases so that plaintiffs' counsel could seek the information directly from his accountant and the IRS. Id. at 11:10–16; see also ECF No. 71. Regarding Houston's deposition, the Court warned defendants' counsel that "to the extent to what [plaintiffs' counsel] referenced is at all accurate, you should certainly be counseling your client to be more responsive and to recognize that if he says he doesn't recall and he does recall that that is perjury." ECF No. 85, Ex. 11 at 17:7–11. The Court's subsequent order did not explicitly address the deposition. ECF No. 71.

In a letter to the Court filed shortly thereafter, defendants' counsel stated that Houston had provided release forms for plaintiff's counsel to request his tax records from both the IRS and his accountant. ECF No. 72 at 1. On February 15, 2021, Houston's accountant sent plaintiffs' counsel a copy of his 2019 tax returns. ECF No. 88, Ex. 2 at 19. That copy, like the records Houston initially produced, was labeled "preview copy." Id. at 21–36. He also reported that Houston had recovered text exchanges with Love beginning on December 28, 2019, and had provided them to plaintiffs' counsel. ECF No. 72 at 1.

Houston sat for a second deposition on February 26, 2021. Pl. Br. at 12. Plaintiffs' counsel and defendants' counsel characterize his conduct differently. Plaintiffs contend that he "doubled down on the obstructionist strategy he employed throughout his first deposition" and "claimed he did not know or could not recall the most basic of information related to himself, his business, and his taxes." Id. at 12. Indeed, Houston failed to answer questions about business expenses reported on his tax returns, his application for Paycheck Protection Funds, withdrawals of cash from the JHC account in early 2020, and his family farm. Id. at 12–16. Houston's

responses to counsel's question regarding his business expenses exemplify his obstreperous conduct throughout the deposition:

> Q: Have you produced those business receipts to your attorney?
> A: I don't know where they are. Once the taxes were done, I don't have them.
> Q: Have you - - have you looked for those receipts?
> A: I have not. They were discarded, so I wouldn't be able to look for them.
> Q: I'm sorry. They were what?
> A: They were discarded. That's why I can't look for them.
> Q: Okay. So if we wanted to find out what the $3,077 in supplies was for, would there be any way for us to find out that information?
> A: I can't recall.
> Q: Okay. Line 24A says travel, $9,649. Do you see that?
> A: I do.
> Q: Okay. What travel does this represent?
> A: My business travel.
> Q: And where did you travel for business?
> A: Where my clients are.
> Q: Where are your clients?
> A: In different places.
> Q: Can you tell us those places?
> A: I can't recall at this moment.
> Q: You can't recall  - - the location of any one of your clients right now?
> A: I cannot.

Houston Dep. at 325:3–326:8. Defense counsel counters that Houston stated that he could not recall an answer to a particular question only seven times at the second deposition and asserts that these answers were truthful. ECF No. 88, Defendants' Memorandum of Law in Opposition ("Def. Br.") at 6–7.

On April 12, 2021, plaintiffs requested a pre-motion conference to discuss a proposed motion to compel and for sanctions pursuant to Federal Rule of Civil Procedure 37. The Court granted the letter motion, permitting plaintiffs to file this motion for sanctions.

**DISCUSSION**

I.      **Legal Standard**

"Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012). Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery." Rule 37(a)(5)(A) provides that if a motion to compel is granted or if requested discovery is provided after the motion is filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Rule further provides that the court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(5)(A)(i)–(iii).

"Rule 37(a) clearly envisions some judicial intervention between a discovery request and the imposition of sanctions. That intervention serves to alert the offending party to the seriousness of its noncompliance and permits judicial scrutiny of the discovery request. The court's order also functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations." Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1364–65 (2d Cir. 1991); see also Arista Recs. LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009) ("Rule 37 sanctions require a showing of violation of a court order.").

In contrast, a prior court order is not required under Rule 37(d). Charles Alan Wright & Arthur R. Miller, et al., 8B Fed. Prac. & Proc. Civ. §2282 (3d ed. 2021). Rule 37(d)(A)(i) allows for an award of sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's deposition." But the "'failure to appear' is strictly construed in this Circuit and only occurs where a deponent 'literally fails to show up for a deposition session.'" Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986) (quoting SEC v. Rsch. Automation Corp., 521 F.2d 585, 588–89 (2d Cir. 1986)). Where a deponent does, in fact, physically appear but is uncooperative, "the proper procedure is first to obtain an order from the court, as authorized by Rule 37(a)." Id.

In addition, "in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2015); see also Church of Scientology Int'l v. Time Warner, Inc., No. 92-cv-3024 (PKL), 1994 WL 38677, at *2 (S.D.N.Y. Feb. 4, 1994) (collecting cases). But "[b]ecause of their very potency," such inherent powers "must be exercised 'with restraint and discretion.'" Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). "Sanctions under the court's inherent power require a showing of bad faith or willfulness." Arista Recs. LLC, 633 F. Supp. 2d at 138. "There must be 'clear evidence' that the challenged actions 'are entirely without color' and that they were taken for 'reasons of harassment or delay or for other improper purposes.'" Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 575 (S.D.N.Y. 2010) (quoting United States v. Int'l Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991)). Furthermore, "such a sanction . . . must be compensatory rather than punitive," and so the complaining party "may recover 'only the portion of [its] fees

7

that [it] would not have paid but for' the misconduct." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186–87 (2017) (quoting Fox v. Vice, 563 U.S. 826, 836 (2011)).

**II.   Analysis**

Houston's conduct has obstructed the discovery process. The Court, however, declines to impose sanctions under Rule 37 in allegiance to the strict requirements of that rule. Although Houston unreasonably withheld his tax returns and text messages, they were produced after a *pre*-motion conference with the Court. While Rule 37(a)(5) contemplates an award of attorneys' fees if discovery is produced after a motion is filed but before the Court has ruled, plaintiffs' letter application was for leave to file a motion, pursuant to Local Civil Rule 37.2. Accordingly, defendants did not respond "after the motion was filed." Fed. R. Civ. P. 37(a)(5)(A).

Rule 37 also does not provide a clear avenue to correct Houston's conduct at his deposition. Technically, he appeared. See Salahuddin, 782 F.2d at 1131 (holding that district court erred in imposing sanctions pursuant to Rule 37(d) because plaintiff appeared at his deposition and answered questions). And the Court declines to find that its admonition regarding perjurious testimony constitutes a court order that was violated. See Fed. R. Civ. P. 37(b); cf. In re Gorsoan, No. 17-cv-5912 (RJS), 2020 WL 3172777, at *10–11 (S.D.N.Y. June 15, 2020) (explaining that moving party was entitled to attorney's fees and costs where the Court had previously found opposing party in contempt for violating court order because her answers were misleading and evasive); Andrews v. Holloway, 256 F.R.D. 136, 140, 142 (D.N.J. 2009) (holding that defendant was in contempt where he gave deliberately unresponsive and misleading answers at his deposition despite a court order directing him to give truthful and complete answers to all relevant questions).

The Court, however, "is not powerless to address abuses of the discovery process," and may "rely on its broad inherent powers to sanction parties 'acting in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Church of Scientology, 1994 WL 38677, at *2 (quoting Sassower v. Field, 973 F.2d 75, 81 (2d Cir. 1992)). Houston prevented defendants from obtaining information to which they were entitled, and he did so in bad faith. He refused to answer basic questions and lied in response to others. See e.g., Houston Dep. 204:15–205:1; ECF No. 89, Ex. 10 at 3 (denying he had other personal bank accounts even though he had just opened a personal checking account with BBVA); see also In re an Arb. Between Karaha Bodas Co., LLC v. Minyak, No. 21-mc-98 (TPG), 2007 WL 1284903, at *6 (S.D.N.Y. Apr. 30, 2007) (awarding sanctions pursuant to the court's inherent power where deponent made intentional false statements); Banjo v. United States, No. 95-cv-633 (DLC), 1996 WL 426364, at *7 (S.D.N.Y. July 30, 1996) (same). He refused to give direct answers to basic questions such as the location of JHC's alleged clients, the approved uses of Paycheck Protection Funds, and whether he ever had an Amazon.com account. See Winn v. Associated Press, 903 F. Supp. 575, 582 (S.D.N.Y. 1995) (awarding monetary sanctions where plaintiff obstructed discovery by, among other misconduct, giving uninformative responses at her deposition and claiming that she "did not recall numerous maters which she surely should be expected to know" despite Court warnings). Houston's disdain for the integrity of the process is exemplified by an exchange with counsel in his second deposition. When counsel asked Houston if he understood that she was entitled to ask additional questions in response to his answers, he responded, "I do, and I'm going to answer the way that I want to answer it." Houston Dep. at 372:3–8. This "willful non-compliance with the discovery process" justifies an award of sanctions against Houston in accordance with the Court's "broad inherent power to impose sanctions in response to abusive

9

litigation practices, thereby ensuring the proper administration of justice." <u>Winn</u>, 903 F. Supp. at 581, 582.

Defendants' opposition to the sanctions motion is without merit. First, defendants do not even attempt to excuse Houston's conduct at his first deposition, and the Court rejects defense counsel's contention that Houston's behavior improved during his second deposition. Second, the doctrine of unclean hands is inapplicable because the Court has found, at a minimum, that plaintiffs' claims are brought in good faith. <u>See</u> ECF No. 98, Opinion & Order re: First Motion to Vacate Order of Attachment. Third, awarding sanctions against Houston provides both a deterrent against Houston repeating such conduct at trial and compensates plaintiffs for the costs associated with a deposition rendered useless by Houston's conduct.

Accordingly, pursuant to the Court's inherent power, it awards plaintiffs the fees associated with Houston's deposition, and for the time spent filing this motion. Plaintiffs may either file a motion proving its fees, or in the alternative, the Court will grant counsel seven hours for the deposition and three hours for the fee motion at counsel's regular hourly rate.

## CONCLUSION

Plaintiffs' motion for sanctions is GRANTED. By April 4, 2022, plaintiffs shall either file a motion for attorneys' fees or submit proof of counsel's regular hourly rate to be awarded for ten hours. Defendants may file any opposition by April 11, 2022. The Clerk of Court is respectfully directed to close the motion at ECF No. 85.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:  New York, New York
        March 28, 2022

10